## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSE ROMANOS, JR.,** )<br>　　　　**Plaintiff,** )<br>　　v. )<br>)<br>**CAROLYN W. COLVIN**, )<br>**Commissioner of Social Security,** )<br>　　　　**Defendant.** )<br>_____ ) | **NO. CV 14-8045-KLS**<br><br>**MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

Plaintiff filed a Complaint on October 27, 2014, seeking review of the denial of his application for disability insurance ("DIB") and Supplemental Security Income ("SSI") benefits. On June 22, 2015, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and either remanding the matter for further administrative proceedings or ordering the payment of benefits. (Joint Stip. at 18.) The Commissioner requests that the ALJ's decision be affirmed. (*Id.* at 7, 17.) On August 12 and 26, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 18-20.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On January 9, 2012, plaintiff, who was born on September 17, 1955,[1] applied for a period of disability, DIB, and SSI. (Administrative Record ("A.R.") 144-53.) Plaintiff had filed a prior application for a period of disability and DIB, which was denied, following a hearing, on June 21, 2007. (*Id.* 167.) In his 2012 application, Plaintiff alleged disability commencing September 1, 2009, due to arthritis, hypertension, diabetes, depression, and neuropathy. (*Id.* 167, 170.) Plaintiff's prior relevant work experience included employment as a fry cook and a darkroom technician. (*Id.* 19, 171.) The Commissioner denied plaintiff's application on July 17, 2012. (*Id.* 86-97.) On August 13, 2012, plaintiff requested a hearing. (*Id.* 99.) On April 25, 2013, plaintiff, who was represented by counsel, testified before Administrative Law Judge Robert A. Evans ("ALJ"). (*Id.* 36-44.) Jeanine Metildi, a vocational expert ("VE"), also testified. (*Id.* 44-46.) On June 6, 2013, the ALJ issued an unfavorable decision, denying plaintiff's claims for DIB and SSI. (*Id.* 10-20.) On August 14, 2014, the Appeals Council denied plaintiff's request for review. (*Id.* 1-4.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date of September 1, 2009. (A.R. 15.) The ALJ further found that plaintiff had the following severe impairment: "myofascial back pain (diabetes and hypertension)." (*Id.*) The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* 16.) The ALJ determined that plaintiff had

---

[1] Plaintiff was 53 years old on the alleged disability onset date and thus a person "closely approaching advanced age" as that term is defined by the Commissioner. 20 C.F.R. §§ 404.1563, 416.963. On his 55th birthday, plaintiff became a person of "advanced age." *Id.*

the residual functional capacity ("RFC") to perform "the full range of medium work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (*Id.*) The ALJ found that plaintiff was able to perform his past relevant work as a fry cook and dark room technician. (*Id.* 19.) Accordingly, the ALJ found that plaintiff was not disabled. (*Id.* 19-20.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision

"and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, __ F.3d __, 2015 WL 4620123, at *4 (9th Cir. Aug. 4, 2015) (internal citations omitted).

.

## DISCUSSION

Plaintiff alleges the following two errors: (1) the Commissioner did not properly consider the opinion of plaintiff's treating physician, Dr. Tipu V. Khan, in determining whether there was substantial evidence in the record to support the ALJ's nondisability determination (*see* Joint Stip. at 3-7); and (2) the ALJ improperly evaluated plaintiff's subjective symptom testimony (*id.* 8-14).

**I.  The ALJ's Nondisability Determination Is Supported By Substantial Evidence Despite The Addition Of Dr. Khan's Opinion To The Administrative Record.**

When the ALJ issued his decision on plaintiff's application, the record contained no opinion from a treating medical source regarding plaintiff's ability to perform work-related activities. Accordingly, when plaintiff asked the Appeals Council to review the ALJ's unfavorable decision, he also submitted a medical source statement provided by Dr. Tipu V. Khan, an obstetrician at the community clinic where plaintiff received medical care in 2011 and 2012. (*See* A.R. 6, 8, 345-47.) The Appeals Council accepted this evidence and made it part of the record (*id.* 6), but denied review after finding that plaintiff's additional evidence provided no basis for changing the ALJ's decision (*id.* 1-2). Plaintiff now challenges the Appeals Council's finding that Dr. Khan's statement did not provide a basis for changing the ALJ's decision. (*See* Joint Stip. at 3-7.)

4

A district court does not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision. *Brewes v. Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). Instead, "when the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and the district court reviews that decision for substantial evidence, based on the record as a whole." *Id.* (internal quotation marks and citations omitted). Further, "[w]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Id.* at 1163. Accordingly, the question for this Court is whether the ALJ's nondisability determination is supported by substantial evidence in the record given the addition of Dr. Khan's opinion. The Court finds that it is.

At the hearing, plaintiff testified that he would be unable to perform sedentary work because his back would prevent him from sitting comfortably (A.R. 39) and also would be unable to "stand behind [a] counter" because of his inability to "bend over right" (*id.* 43). He testified that his back pain was due to arthritis. (*Id.*) He testified that he had neither received nor scheduled any surgery related to his back and was able to control his back pain effectively with Vicodin. (*Id.*) Plaintiff testified that the Vicodin made him sleepy and the sleepiness would "affect" his ability to do a job, but he also stated that he had not discussed the sedative side effects of the Vicodin with his doctor. (*Id.* 41-42.) Plaintiff testified that he also receives "physical therapy on [his] neck for deterioration of three . . . discs." (*Id.* 39.) He testified that his physical therapy consisted of "ultrasound, some heat, like once a week." (*Id.*) Plaintiff described himself as having the following functional limitations: he can lift about 10 pounds; he can stand for 30 minutes at a time; and he has difficulty bending over. (*Id.* 42-43.) He described his daily activities as watching TV and laying down. (*Id.* 41.)

The record contain two sets of medical evidence, the first concerns plaintiff's first application for benefits, which was denied on June 21, 2007 (*see generally* A.R. 197-244; *see also id.* 56 (ALJ's discussion of the medical evidence in the hearing decision disposing of plaintiff's first application for a period of disability and DIB)); and the second concerns the application for benefits at issue in this case (*see generally* (A.R. 248-266, 271-84, 292-96, 331-344). Accordingly, the record contains the opinions of two examining physicians. The first is the April 8, 2006 opinion of Dr. Warren David Yu, a board certified orthopedic surgeon who examined plaintiff in connection with his first application benefits. (A.R. 244-47; *see also id.* (ALJ's discussion of Dr. Yu's opinion in the hearing decision disposing of plaintiff's first application for a period of disability and DIB).) Dr. Yu observed that: plaintiff's gait, range of motion, motor strength, and sensation were within normal limits (A.R. 245-46); plaintiff experienced moderate lumbosacral tenderness (*id.* 245); there was no evidence of fractures or dislocations in plaintiff's lumbosacral spine and the disc spaces were well-maintained (*id.* 246); and the radiographs of plaintiff's lumbosacral spine were "unremarkable" (*id.*). Dr. Yu also reported that plaintiff had received no formal treatment for back pain other than mild chiropractic treatments and takes Ibuprofen or Tylenol when his pain is severe. (*Id.* 244.) Based on his findings and observations, Dr. Yu concluded that plaintiff could: walk without an assistive device; sit, stand, or walk for up to six hours in an eight-hour workday; pick up 25 pounds frequently and 50 pounds occasionally; and have free use of his upper extremities. (*Id.* 18, 244-47.)

The second examining physician's opinion in the record is that of Dr. Robin Alleyne, the board certified internist who examined plaintiff on June 14, 2012 in connection with plaintiff's second application for benefits. (A.R. 292-96.) Plaintiff told Dr. Alleyne that he suffered chronic low back pain, chronic neck pain that was worse with movement, and pain in his left leg that was aggravated by lifting, bending, walking, and lying on his left side. (*Id.* 292.) Dr. Alleyne's physical examination revealed the following: plaintiff could generate 40 pounds of force with his right hand and 40 pounds of force with his left hand;

plaintiff's range of motion in his neck was within normal limits; plaintiff's forward flexion in his back was limited to 80 degrees, but there was no tenderness or evidence of muscle spasm; there was no pain associated with any motion of plaintiff's arms or legs, and his range of motion was within normal limits; plaintiff exhibited normal muscle bulk and tone without atrophy; plaintiff's gait and balance were normal, and he could walk on tiptoes and on heels without difficulty; and plaintiff's sensation was intact to light touch throughout. (*Id.* 293-94.) Dr. Alleyne concluded that plaintiff could: lift and carry up to 25 pounds frequently and 50 occasionally; push and pull without limitations; walk and sit without restrictions; climb, balance, knee, and crawl without restrictions; have full use of his hands; and could work without any environmental restrictions. (*Id.* 292-96.)

The record also includes plaintiff's treatment notes from the Wilmington Family Health Center at the Harbor-UCLA Medical Center (A.R. 271-84) and UMMA Community Clinic (*id.* 248-266, 331-344), which, combined, document treatment plaintiff received between March 7, 2011 and December 19, 2012. These records show that plaintiff: was diagnosed with mild osteoarthritis;[2] intermittently complained of back and neck pain;[3] routinely exhibited a range of motion within normal limits when tested (*see e.g.*, A.R. 343 (April 24, 2012), 257 (June 22, 2011), 256 (August 8, 2011), 255 (August 22, 2011), 248 (March 7, 2012), 274-75 (September 6, 2011), 276 (May 18, 2011)); and was generally prescribed conservative treatment, *i.e.*, anti-inflammatory medications and low-grade pain relievers, muscle relaxants, a stretching regimen, and heat (*see e.g.*, A.R. 280-81 (April 7, 2011: Flexeril and warm compresses), 252 (October 12, 2011: Ibuprofen and low back

---

[2] On September 14, 2011, Dr. Arnold P. Hageman, M.D., reviewed the x-ray of plaintiff's lumbosacral spine and diagnosed plaintiff with mild osteoarthritis of the lumbosacral spine. (A.R. 266.) Dr. Hageman further found that: the intervertebral spaces were unremarkable; there was a slight tilting of the lumbosacral spine to the left; there was no gross evidence of pars interarticularis defects; the sacroiliac joints were normal; and there was no soft tissue pathology observed. (*Id.*)

[3] Specifically, plaintiff complained of neck pain exclusively on April 7, May 11, May 18, and June 22 of 2011 (A.R. 280-81, 278, 276, 257) and September 19, 2012 (*id.* 336) and complained of back pain on August 8 and September 6 of 2011 (*id.* 256, 274-75) and June 9, October 2, and December 19 of 2012 (*id.* 342, 334, 331-32), but he made *no* complaints of physical pain on March 7, May 18, and September 8 of 2011 (*id.* 284, 258, 272) and February 2, March 23, August 9, and September 5 of 2012 (*id.* 249, 271, 340, 338-39).

stretches), 251 (October 18, 2011: Motrin and Tylenol), 250 (November 8, 2011: Salsalate and Flexeril), 248 (March 7, 2012: "likely needs better stretching")).[4] On September 19, 2012, plaintiff was prescribed Vicodin for his neck. (A.R. 336-37.)

Finally, the record contains the May 31, 2013 opinion of Dr. Khan, a family medicine obstetrician whom plaintiff calls his treating physician. However, the Court's thorough review of the record indicates that plaintiff saw Dr. Khan on only one occasion: a September 5, 2012 blood pressure check at UMMA Community Clinic. (*Compare* A.R. 338-39 *with id.* 271-84, 248-266, 331-344.) In the treatment note documenting that visit, Dr. Khan made no reference to plaintiff complaining of any physical pain. (*Id.* 338-39.) Nevertheless, many months later, on May 31, 2013, Dr. Khan opined on a form prepared by plaintiff's attorney that, due to degenerative joint disease, plaintiff, *inter alia*: could lift and carry less than 10 pounds; could stand, walk, or sit for about 2 hours in an 8-hour day with normal breaks; would need to lie down once or twice during the day; experienced pain while engaging in handling (gross manipulation), fingering (fine manipulation), and feeling; and would be absent from work due to his impairment about twice a month. (*Id.* 345-47.)

Dr. Khan's opinion is contradicted by the opinions of Drs. Yu and Alleyne, unsupported by the Dr. Khan's treatment notes, and inconsistent with the medical record as a whole. *Cf. Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (Commissioner may discredit a treating physician's opinion that is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings"). The record also does not support plaintiff's assertion that Dr. Khan's opinion should be entitled to great weight because he is plaintiff's treating physician. (*See* Joint Stip. at 3, 5); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (discussing the weight to which a treating

---

[4] On a few occasions, plaintiff was prescribed stronger pain medications. (*See, e.g.,* A.R. 256 (August 8, 2011: Motrin and Toradol, a short-term anti-inflammatory medication), 254 (September 12, 2011: Tramodol, an opioid analgesic, that was prescribed only briefly because it caused plaintiff to itch)).

8

physician's opinion is entitled).  To the contrary, the record suggests that, like Drs. Yu and Alleyne, Dr. Khan examined plaintiff on only one occasion and, on that occasion, plaintiff did not present Dr. Khan with any complaints of physical pain. *Cf.* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (in determining how much weight to afford a treating physician's medical opinion, the Commissioner must consider, *inter alia*, the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship).  Accordingly, the ALJ's determination that plaintiff is not disabled is supported by substantial evidence in the record despite the addition of Dr. Khan's opinion.

**II.     The ALJ Did Not Err In Assessing Plaintiff's Credibility.**

Plaintiff's second contention is that the ALJ improperly discounted his subjective symptom testimony.  (Joint Stip. at 8-14.)   An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Id.*  "General findings are insufficient." *Brown-Hunter*, __ F.3d __, 2015 WL 4620123, at *4 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Here, the ALJ found that he could not assess greater functional limitations or total disability based on plaintiff's subjective complaints because they were not fully credible. (A.R. 17.)   The ALJ cited the following reasons for discounting plaintiff's excess pain testimony:  (1) plaintiff's subjective complaints were "out of proportion" to the objective

9

clinical findings and observed functional restrictions; (2) plaintiff's treatment was conservative despite his allegations of very limiting pain; and (3) plaintiff's daily activities were not limited to the extent one would expect given plaintiff's complaints of disabling symptoms and limitations. (*Id.*)

The ALJ's reasons for discounting plaintiff's subjective symptom testimony are legally sufficient and supported by substantial evidence in the record. As explained in detail in the previous section, plaintiff's complaints of disabling pain and functional limitations are belied by the medical evidence, which shows that plaintiff: had mild osteoarthritis with normal sacroiliac joints, unremarkable intervertebral spaces, and no soft tissue pathology; complained only intermittently of physical pain; never complained of severe pain, *i.e.,* pain ranking 7 or higher on the 1-10 pain scale; routinely exhibited a normal range of motion in all extremities; and had normal muscle tone and bulk without atrophy. Although the conflict between plaintiff's testimony and the objective medical evidence cannot form the sole basis for the ALJ's adverse credibility determination, the ALJ did not err by finding that the conflict is one reason for discounting plaintiff's subjective symptom testimony. *See Burch*, 400 F.3d at 681.

The ALJ also did not err in citing plaintiff's conservative treatment as a second reason for discounting plaintiff's subjective symptom testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant's favorable response to conservative treatment – namely physical therapy, anti-inflammatory medication, TENS unit, and lumbosacral corset – undermined claimant's reports regarding the disabling nature of his pain). Plaintiff was never identified as possibly requiring surgery, he was never advised to cease working, and he was never directed to minimize his physical activity. Instead, the medical record shows that plaintiff's treatment consisted primarily of non-steroidal anti-

1 inflammatory medications, a muscle relaxant (Flexeril), stretches, and heat. Although
2 plaintiff was very briefly prescribed Tramodol (A.R. 254) and, in September 2012, received
3 a prescription for Vicodin for his neck (*id.* 336-37), his more conservative treatment was
4 sufficiently effective that he only intermittently complained of pain to the nurses and doctors
5 at the Wilmington Family Center and UMMA Community Clinic (*see id.* 285, 258, 272, 249,
6 271, 340, 338-39 (describing visits at which plaintiff did not complain of physical pain)).
7 Accordingly, the record supports the ALJ's finding that plaintiff's credibility was
8 undermined by his conservative treatment and favorable response to that treatment.

10 Having determined that two of the ALJ's three reasons for discounting plaintiff's subjective symptom testimony are clear and convincing and supported by substantial evidence, the Court does not need to determine whether the ALJ's third reason for discounting plaintiff's testimony – plaintiff's self-reported daily activities – was also clear and convincing. However, the Court notes that, even if the ALJ did err in his assessment of plaintiff's credibility, the error was harmless because plaintiff failed to seek treatment for many of the problems that he presented as disabling in his hearing testimony and he made inconsistent statements to the examining physicians. *Cf. Brown-Hunter*, __ F.3d __, 2015 WL 4620123, at *4 (error is harmless if it is "'inconsequential to the ultimate nondisability determination,'" or if despite the legal error, 'the agency's path may reasonably be discerned'") (internal citations omitted); *see also Ghanim*, 763 F.3d at 1163 (ALJ may use a claimant's prior inconsistent statements concerning his symptoms, testimony that appears less than candid, and a claimant's unexplained failure to seek treatment to assess a claimant's credibility).

25 For example, plaintiff initially testified at the hearing that he would be unable to perform sedentary work due to arthritis in his back, but he then stated that he was not receiving any treatment for his back – only physical therapy for his neck. (A.R. 39.) He intimated that he had to spend much of the day lying down due to the sedative effects of his

Vicodin prescription (*id.* 40-42) but conceded that he had never mentioned this side effect to a medical professional (*id.* 41-42). Plaintiff's attorney followed up with the question: ""Do you think you would be lying down on a job?" (*Id.* 42.) Plaintiff responded "Probably because I can't lift anything. I'm already having problems with my knees." (*Id.*) However, plaintiff had not sought treatment for knee problems from either the Wilmington Family Center or the UMMA Community Clinic. (*See generally* A.R. 271-84, 248-266, 331-344.) Finally, when asked if plaintiff could work as a cashier at a 7-11 – that is, "stand behind the counter, scan things, . . . [not] lift up anything," plaintiff stated that it would be "too much" for him because he was "having problems with [his] hips." (*Id.* 43.) Again, the record shows that plaintiff did not seek treatment for chronic or recurring hip problems from either the Wilmington Family Center or the UMMA Community Clinic. (*See generally id.* 271-84, 248-266, 331-344.) Accordingly, plaintiff's hearing testimony reads like a laundry list of physical complaints – neck pain, back pain, sleepiness, knee problems, and hip problems – for which plaintiff either never sought treatment or received only conservative treatment. It does not appear to be a candid description of plaintiff's pain and physical limitations.

This reading is bolstered by the discrepancies between his hearing testimony and his statements to the examining physicians, Drs. Yu and Alleyne. In 2006, he presented himself to Dr. Yu as suffering only from back pain. (A.R. 244.) He did not also complain of neck, knee, or hip problems, as he did in his hearing testimony, and did not note any "radicular symptoms." (*Id.*) However, in 2012 he presented himself to Dr. Alleyne as suffering from "pain that radiates down his left leg," "chronic neck pain," and "arthritis in his lower back." (*Id.* 292.) He did not complain of also suffering disabling back pain or problems with his hips and knees as he did in his hearing testimony, and he did not report experiencing pain in his left leg to the ALJ. (*Id.*) Further, the Wilmington Family Center and UMMA Community Clinic records reveal that plaintiff never complained of pain radiating down his left leg to his treatment professionals. (*See generally* A.R. 271-84, 248-266, 331-344.)

In sum, the record is rife with inconsistencies between plaintiff's statements to the ALJ, Dr. Yu, and Dr. Alleyne and reveals that plaintiff complained of multiple conditions to the ALJ that he had not previously presented to a medical professionals. Thus, to the extent that the ALJ may have erred in his assessment of plaintiff's credibility, it is inconsequential to the ALJ's nondisablity determination and does not provide grounds for reversal.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: September 4, 2015

　　　　　　　　　　　　　　　　　　／s／ Karen L. Stevenson
　　　　　　　　　　　　　　　　　　KAREN L. STEVENSON
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE